IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC.   :

    v.                      :    Civil Action No. 10-0105

DARRYL B. GREENE                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case involving alleged violations of the Communications Act of 1934 is a motion filed by Plaintiff J & J Sports Productions, Inc., for entry of default judgment. (Paper 11). The issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion will be granted.

**I.   Background**

On January 15, 2010, Plaintiff J & J Sports Productions, Inc., commenced this action against Defendant Darryl B. Greene, individually and as officer, director, shareholder and/or principal of Greater Washington Area Wow, LLC, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 (unauthorized reception of cable service) and 605 (unauthorized publication or use of communications). (Paper 1). Pursuant to a licensing agreement, Plaintiff obtained the

distribution rights to the broadcast of the December 6, 2008, professional boxing match between Oscar De La Hoya and Manny Pacquaio *via* closed circuit television and encrypted satellite signal ("the Broadcast"). Plaintiff then entered into sublicensing agreements with commercial establishments, such as bars and restaurants, that purchased the rights to exhibit the Broadcast for their patrons. Plaintiff claimed that Defendant, "with full knowledge that the Broadcast was not to be received and exhibited by entities unauthorized to do so, . . . unlawfully intercepted, received and/or de-scrambled [the] satellite signal" and exhibited the Broadcast to the patrons of the Wow Café and Wingery in Largo, Maryland. (Paper 1, ¶ 19).[1] The complaint did not specify a damages amount, but requested "statutory penalties in an amount . . . of up to the maximum amount of $110,000" for Defendant's violation of § 605, as well as damages under § 553, and an award of attorney's fees and costs. (Paper 1, at 7-8).

The record reflects that Defendant was served with the complaint on March 23, 2010. (Paper 5). When Defendant failed to respond within the requisite time period, Plaintiff moved for entry of default on April 16, 2010. (Paper 7). Shortly after

---

[1] The claims against Greater Washington Area Wow, LLC, d/b/a Wow Café and Wingery, a second defendant named in the complaint, were voluntarily dismissed by Plaintiff. (Papers 8, 9).

the clerk's entry of default (paper 10), Plaintiff filed the instant motion for default judgment (paper 11). Defendant has failed to respond to any of Plaintiff's filings.

**II. Analysis**

Pursuant to Fed.R.Civ.P. 55(b)(1), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow*, 232 F.Supp.2d at 494 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive. *See S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

3

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*,

Civ. No. WDQ-09-3174, at *3 (D.Md. Apr. 16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested").

Although Plaintiff's complaint sought "statutory penalties . . . of up to the maximum amount of $110,000" for Defendant's violation of § 605, as well as the maximum of $60,000 for violation of §553, its motion for default judgment limits the damages request to the amount permissible under § 605. *See J & J Sports Prods., Inc. v. Quattrocche*, No. , 2010 WL 2302353, at *1 (D.Md. June 7, 2010) ("plaintiffs cannot recover under both [§§ 513 and 605] for the same conduct and courts allow for recovery under only § 605 as it provides for greater recovery") (citing *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469 (E.D.N.Y. 2009); *Kingvision Pay-Per-View, Ltd. v. Las Reynas Restaurant, Inc.*, Civ. No. 4:07-67, 2007 WL 2700008, at *1 (E.D.N.C. Sept. 11, 2007)). The $110,000 amount sought by Plaintiff consists of a request for $10,000 in statutory damages, the maximum allowable under § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages, the maximum amount under § 605(e)(3)(C)(ii).[2]  Plaintiff additionally seeks an award of

---

[2] While both provisions under § 605(e)(3)(C) are prescribed by statute, for ease of exposition the court refers to the damages amount under § 605(e)(3)(C)(i)(II) as "statutory damages" and those under § 605(e)(3)(C)(ii) as "enhanced damages."

5

attorney's fees and costs in the amount of $1,507.13, and thus requests a total award of $111,507.13. Each of these requests will be considered, in turn.

**A.    Statutory Damages**

In *Quattrocche*, 2010 WL 2302353, at *2, Judge Nickerson set forth the relevant considerations in the damages analysis under § 605(e)(3)(C)(i)(II):

> Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising [] discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civ. No. 109-00590, 2010 WL 1790973, at * 5 (E.D.Va. April 12, 2010) (patrons present); *[Kingvision Pay-Per-View, Ltd. v.] Admiral's Anchor*, 172 F.Supp.2d [810,] 812 [S.D.W.Va. 2001] (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.*, 232 F.Supp.2d 679, 681 (S.D.W.Va.2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *[J & J Sports Prods., Inc. v.] 291 Bar & Lounge*, 648 F.Supp.2d [469,] 474 [E.D.N.Y. 2009]. The second variation seeks to award the license fee the

> defendant would have paid if it had legally purchased the event for exhibition. *Id*. The other approach to calculating damages is to award a flat sum per violation. *[J & J Sports Prods., Inc. v.] J.R.'Z Neighborhood Sports Grille*, 2010 WL 1838432, at *1 [D.S.C. Apr. 5, 2010] ($5000); *[Joe Hand Promotions, Inc. v.] Angry Ales*, 2007 WL 3226451, at *5 [W.D.N.C. Oct. 29, 2007] ($1000); *Kingvision Pay-Per-View Ltd. v. Gadson*, Civ. No. 1:04-678, 2007 WL 2746780, at * 2 (M.D.N.C. Sept. 18, 2007) ($10,000); *Las Reynas Restaurant*, 2007 WL 2700008, at * 3 ($2000).

In support of its argument that the maximum amount of statutory damages should be awarded in this case, Plaintiff attaches the affidavit of its President, Joseph Gagliardi. (Paper 11, Attach. 1). Mr. Gagliardi avers that in order to safeguard its rights under the licensing agreement, Plaintiff hired independent auditors who were deployed to various locations for the purpose of identifying establishments that unlawfully exhibited the Broadcast. Attached to Mr. Gagliardi's affidavit is the affidavit of Ta'mi Clark, the auditor who observed the Broadcast on six television sets in the bar area of the Wow Café and Wingery on the evening of the event. (Paper 11, Attach. 1, Ex. C). She was not charged an entrance fee, remained in the restaurant for approximately thirty minutes, and counted approximately sixty-five patrons inside. (*Id.*). Mr. Gagliardi's affidavit further states that Defendant was not authorized to exhibit the Broadcast, that it could not have been

7

mistakenly or innocently intercepted, and that Plaintiff has lost millions of dollars in recent years as a result of similar acts of "signal piracy" (paper 11, attach. 1, at ¶ 11).

Plaintiff points to two cases decided by the United States District Court for the Southern District of West Virginia in which, according to Plaintiff, damages pursuant to § 605(e)(3)(C)(i)(II) have been determined "based on estimated capacity [of the establishment exhibiting the broadcast] multiplied by a set amount and that total multiplied by a factor of five," citing *Admiral's Anchor, Inc.*, 172 F.Supp.2d 810, and *Gridiron, Inc.*, 232 F.Supp.2d 679. Plaintiff misinterprets the methodology employed in those cases, however. In *Admiral's Anchor, Inc.*, 232 F.Supp.2d at 812, the plaintiff submitted evidence that if the defendant had paid to exhibit the boxing match at issue, the licensing fee would have been determined by multiplying the maximum occupancy of the establishment, which was estimated to be between 100 and 115 people, by $17.50. The court accepted the maximum occupancy estimate of 100 and multiplied that number by $17.50 to arrive at an "actual damages" award of $1,750. *Id*. Similarly, in *Gridiron, Inc.*, 232 F.Supp.2d at 681, the court multiplied the estimated maximum occupancy of the establishment in question, 160 people, by $17.50 to arrive at a damages award of $2,800. In both cases, the courts then multiplied the statutory damages awards under §

605(e)(3)(C)(i)(II) by five to determine the enhanced damages awards under § 605(e)(3)(C)(ii).

Plaintiff's suggested calculus appears to conflate statutory and enhanced damages:

> In the current case, the capacity of the establishment is unknown, however, an eyewitness establishes that approximately sixty-five (65) patrons witnessed the [Broadcast]. Multiplying this by $50.00 per patron and then multiplying that total by 5[,] one arrives at $16,250.00.

(Paper 11, Attach. 3, at 8). As noted, *Admiral's Anchor, Inc.*, 232 F.Supp.2d at 812, and *Gridiron, Inc.*, 232 F.Supp.2d at 681, multiplied the statutory damages figure by five to determine the enhanced damages award. Plaintiff, however, appears to request that the court multiply by five to arrive at a statutory damages amount of $16,250, which would be reduced to the maximum allowable of $10,000, in addition to the maximum award of enhanced damages. Thus, Plaintiff improperly seeks double recovery. Moreover, while there is support in this circuit for using the number of patrons present as one of the factors in the equation, *see Joe Hand Promotions, Inc.*, 2010 WL 1790973, at *5, Plaintiff has provided no explanation as to why that number should be multiplied by $50.00. In *Quattrocche*, 2010 WL 2302353, at *2, the court explained that one line of cases "seeks to approximate . . . the plaintiff's lost earnings assuming each patron would have ordered the event for

residential viewing," citing *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 474 (E.D.N.Y. 2009). To the extent that the $50.00 figure suggested by Plaintiff might represent the cost for a residential viewer to watch the event, this part of Plaintiff's computation is at least plausible.[3] Plaintiff, however, has pointed to no evidence suggesting that the residential fee was $50.00; thus, there is insufficient proof to calculate damages in this manner.

In determining statutory damages in *Admiral's Anchor, Inc.*, and *Gridiron, Inc.*, the courts sought to approximate the amounts the offending establishments would have been required to pay in order to exhibit the boxing matches lawfully. Plaintiff has attached to its memorandum a "rate card" (paper 11, attach. 3, ex. c), demonstrating that "[t]he cost for Defendant to legally purchase the December 6, 2008 [Broadcast] was $2,200.00 based on an occupancy of 0-100 patrons" (paper 11, attach. 3, at 11). Thus, Plaintiff appears to accept this figure as the amount that it was out-of-pocket due to Defendant's violation. Although Plaintiff further argues that it "should be entitled to the

---

[3] In *J & J Sports Productions, Inc. v. Guzman*, 553 F.Supp.2d 195, 199 (E.D.N.Y. 2008), a case involving the same plaintiff, the court multiplied the number of patrons present by $54.95 where Mr. Gagliardi's affidavit attested "that a private residence would have been able to purchase the event at the residential price of $54.95." Here, Mr. Gagliardi's affidavit is silent as to the residential price.

maximum statutory damages as Defendant willfully pirated this event," Defendant's willfulness is a factor only in the enhanced damages analysis. Accordingly, Plaintiff will be awarded statutory damages under § 605(e)(3)(C)(i)(II) in the amount of $2,200.

   B.  **Enhanced Damages**

Pursuant to § 605(e)(3)(C)(ii), where the court finds that a violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." Plaintiff seeks the maximum award of $100,000 in enhanced damages, citing the "significant sums" it has spent "to combat rampant piracy" and the goal of deterrence. (Paper 11, Attach. 3, at 10).

In *Quattrocche*, 2010 WL 2302353, at *2, the court explained:

> In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks. *Bougie,* 2010 WL 1790973, at *6; *J.R.'Z Neighborhood Sports Grille, Inc.*, 2010 WL 1838432, at *2; *Las Reynas Restaurant*, 2007 WL 2700008, at *3; *Gadson*, 2007 WL 2746780, at *3).

11

The fact that Defendant intercepted and exhibited the Broadcast willfully and for direct or indirect commercial advantage cannot be doubted. "After all, '[s]ignals do not descramble spontaneously, nor do televisions sets connect themselves to cable distribution systems.'" *Joe Hand Promotions, Inc.*, 2010 WL 1790973, at *6 (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)). Plaintiff has presented no evidence, however, that Defendant is a repeat violator, that he advertised that the Wow Café and Wingery would be exhibiting the Broadcast, or that he enjoyed any increased business as a result of the exhibition. In fact, Ms. Clark's affidavit strongly suggests that an admission fee was not charged.

Still, if only statutory damages were awarded, there would be little to deter Defendant or other similarly situated businesses from risking future violations. Thus, enhanced damages will be awarded in this case. Courts have generally awarded "'anywhere from three to six times the statutory damages award for enhanced damages[.]'" *J.R.'Z Neighborhood Sports Grille, Inc.*, 2010 WL 1838432, at *2 (quoting *J & J Sports Productions, Inc. v. Ribiero*, 562 F.Supp.2d 498, 502 (S.D.N.Y. 2008)). In *Quattrocche*, 2010 WL 2302353, at *3, where the defendant charged an admission fee for its unlawful exhibition of a boxing match, Judge Nickerson calculated enhanced damages

by "multiplying the [minimum] statutory damages by a factor of 5." Here, where the evidence suggests that no admission fee was charged and more than twice the minimum amount of statutory damages will be awarded, the court will multiply the statutory damages amount by a factor of three. Thus, Plaintiff will be awarded enhanced damages under § 605(e)(3)(C)(ii) in an amount of $6,600 and a total damages award of $8,800.

**C. Attorney's Fees and Costs**

Pursuant to 47 U.S.C. §605(e)(3)(B)(iii), the aggrieved party is entitled to recover "full costs," including "reasonable attorney's fees." Plaintiff has submitted the affidavit of Wayne D. Lonstein, Esq., providing a detailed breakdown of the attorney's fees and costs incurred in this matter. (Paper 11, Attach. 2). Mr. Lonstein avers that $1,507.13 is an accurate representation of Plaintiff's fees and costs, and the court finds that amount is reasonable. The hours expended are modest and the hourly rates are well within the acceptable range. Accordingly, Plaintiff will be awarded attorney's fees and costs of $1,507.13.

**III. Conclusion**

For the foregoing reasons, Plaintiff's motion for default judgment will be granted and judgment will be entered, in Plaintiff's favor, in the total amount of $10,307.13. A separate order will follow.

                                              _____/s/_____
                                              DEBORAH K. CHASANOW
                                              United States District Judge